UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE HUDAK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HEXO CORP., SÉBASTIEN ST. LOUIS, ED CHAPLIN, MICHAEL MONAHAN, and STEVE BURWASH,<br><br>Defendant. | No. 1:20-CV-00196<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Case 1:20-cv-00196 Document 1 Filed 01/09/20 Page 2 of 27

Plaintiff George Hudak ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, counsel's investigation, which includes, without limitation, review and analysis of (a) regulatory filings made by HEXO Corp. ("HEXO" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) research reports from securities and financial analysts and research firms; (c) Company press releases and reports; (d) Company website, social media posts and marketing materials; (e) news and media reports concerning the Company and other facts related to this action; (f) price and volume data for HEXO common stock; and (g) additional materials and data concerning the Company and industry as identified herein.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a federal securities class action on behalf of persons and entities that purchased or otherwise acquired HEXO securities between January 25, 2019 and November 15, 2019, inclusive (the "Class Period"). Plaintiff pursues claims against Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. HEXO is purportedly a licensed producer and distributor of branded cannabis products. The Company caters to both the medical and recreational (adult-use) cannabis markets with its Hydropothecary (medical) and HEXO (adult-use) brands. The Company, whose shares previously traded exclusively on the Toronto Stock Exchange, listed its shares on the NYSE American on January 23, 2019. On July 16, 2019, HEXO became listed and began trading on the New York Stock Exchange ("NYSE").

3. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business,

operations, and prospects. Specifically, Defendants failed to disclose to investors that: (i) HEXO's reported inventory was misstated as the Company was failing to write down or write off obsolete product that no longer had value; (ii) HEXO was engaging in channel-stuffing to inflate its revenue figures and meet or exceed revenue guidance provided to investors; (iii) HEXO was cultivating cannabis at its facility in Niagara, Ontario that was not appropriately licensed by Health Canada; and (iv) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

4. Investors learned the truth through a series of disclosures beginning on October 4, 2019, when HEXO announced the abrupt and immediate resignation of its then-Chief Financial Officer ("CFO"), Defendant Michael Monahan ("Monahan"), after just a few months into the job. Days later, on October 10, 2019, HEXO provided preliminary fourth quarter ("Q4") 2019 revenue results that were nearly 50% lower than previous guidance and withdrew previously announced fiscal year ("FY") 2020 guidance of up to CAD$400 million in revenue. Then, on October 29, 2019, the Company announced wider than expected losses in Q4 2019, including recording an impairment loss on inventory of nearly CAD$17 million. Finally, on November 15, 2019, the Company admitted to growing cannabis in an unlicensed area of its Niagara facility, which the Company knew about since as late as July 2019, but failed to disclose to investors.

5. HEXO has lost hundreds of millions of dollars in market capitalization as a result of these disclosures. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

6. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

8. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). A substantial part of the conduct complained of herein, including the dissemination of materially false and misleading information to the investing public and the omission of material information, occurred in this District.

9. In connection with the acts, conduct, and other wrongs alleged herein, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including, without limitation, the U.S. mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

10. Plaintiff, as set forth in the accompanying Certification, incorporated by reference herein, purchased HEXO securities during the Class Period, and suffered damages as a result of the violations of the federal securities laws alleged herein.

11. Defendant HEXO Corp. ("HEXO" or the "Company") is organized in Ontario, Canada, with its principal executive offices located in Gatineau, Québec. The Company's common shares trade in an efficient market on the NYSE under the ticker symbol "HEXO."

12. Defendant Sébastien St. Louis ("St. Louis") was HEXO's President, Chief Executive Officer, and co-founder at all relevant times.

13. Defendant Ed Chaplin ("Chaplin") was HEXO's CFO at all relevant times until May 2019.

14. Defendant Monahan was HEXO's CFO from May 2019 to October 2019.

15. Defendant Steve Burwash ("Burwash") was HEXO's Vice President of Strategic Finance, and later the Company's CFO.

16. Defendants St. Louis, Chaplin, Monahan, and Burwash are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with HEXO, possessed the power and authority to control the contents of HEXO's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and investors. Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

17. The Individual Defendants are liable for the statements and omissions of material facts directly attributed to them, and also the false statements pled below, as those statements were "group-published" information and the Individual Defendants were substantially involved in preparing, disseminating, and certifying HEXO's press releases and SEC filings. The Individual Defendants are also liable for HEXO's false financial results, material omissions and acts in furtherance of the accounting and financial schemes used to inflate HEXO's results and projections, maintain artificially high market prices, and to enrich themselves. The Individual

Defendants are also liable for participating in deceptive conduct, knowingly concealing facts necessary to render HEXO's financial results and its statements not misleading, and for knowingly furnishing false information, and omitting material facts, to investors through HEXO's earnings releases, SEC filings and conference calls. HEXO's accounting manipulations were done for the specific purpose of inflating HEXO's results to meet public guidance, and it was necessary and inevitable that the fraudulent financial information would be communicated to investors.

## SUBSTANTIVE ALLEGATIONS

### Background

18. Based in Gatineau, Quebec, HEXO is a consumer-packaged goods cannabis company that, together with its subsidiaries, produces, markets, and sells cannabis for both recreational and medical use in Canada and abroad. The Company offers dried cannabis under the Time of Day and H2 lines; Elixir, a cannabis oil sublingual mist product line; and Decarb, an activated fine-milled cannabis powder product. It provides its products under the HEXO and Hydropothecary brand names.

19. The Company was incorporated in 2013 under the name The Hydropothecary Corporation. In 2018, with the growing market for legalized cannabis, the Company rebranded itself as HEXO Corp. In its filings and public statements, the Company describes itself as an "award-winning consumer-packaged goods cannabis company that creates and distributes award-winning products to serve the global cannabis market," and "one of the largest licensed cannabis companies in Canada."

20. On January 23, 2019, HEXO shares debuted on the NYSE American trading under the symbol "HEXO."

21. On March 13, 2019, HEXO announced a definitive arrangement agreement to acquire Newstrike Brands Ltd. The Company claimed the acquisition would allow HEXO to boost its production capacity to 150,000 kg annually, diversify its domestic market penetration to nine provinces, and add infrastructure supporting the Company on its goal of becoming one of the top cannabis companies in the world, including its Niagara, Ontario facility.

22. On July 16, 2019, the Company transferred the listing of its common shares from the NYSE American to the NYSE.

**Materially False and Misleading Statements Issued During the Class Period**

23. The Class Period begins on January 25, 2019. On that day, HEXO filed a Prospectus Supplement with the SEC entitled "Prospectus Supplement to the Amended And Restated Short Form Base Shelf Prospectus Dated December 14, 2018," in connection with a public offering of 8,855,000 common shares (the "January 25, 2019 Prospectus Supplement"). The January 25, 2019 Prospectus Supplement stated, in relevant part:

> For the Company's fiscal quarter ended October 31, 2018 (which reflected adult-use sales for the first two weeks following legalization in Canada on October 17, 2018), the Company reported adult-use sales of approximately $5.2 million, with gross revenue per gram for adult-use sales of $5.45 and gram and gram equivalents sold in the adult-use market of 952,223 grams for that fiscal quarter. Of the $5.2 million of adult-use sales for that fiscal quarter, the Company estimates that 90% was realized in Quebec through the Company's supply agreement with the SQDC. While the Company has yet to report any financial results for any period subsequent to October 31, 2018, the Company estimates adult-use sales for the period from November 1, 2018 to January 13, 2019 to be approximately $10 million. Such estimate is based on the information available to us at this time and should not be viewed as a substitute for our full interim or annual financial statements prepared in accordance with IFRS.[1]

24. On March 13, 2019, HEXO issued a press release entitled "HEXO Corp to acquire Newstrike Brands Ltd.," announcing a "definitive arrangement agreement" involving HEXO's acquisition of Newstrike, an entity described as "the parent company of Up Cannabis

[1] All amounts expressed are in Canadian dollars

Inc., a licensed producer of cannabis that is licensed to both cultivate and sell cannabis in all acceptable forms."

25. In the press release, St. Louis stated:

> "We're thrilled to welcome the Newstrike team into the HEXO family. Jay Wilgar (CEO of Newstrike) and his team have built incredible relationships, including teaming up with The Tragically Hip, and they share HEXO's vision of bringing exceptional branded cannabis experiences to adults everywhere," said Sebastien St-Louis, CEO and co-founder of HEXO Corp "With Newstrike, we're adding talented employees and infrastructure to take HEXO to the next level on our journey to become one of the largest cannabis companies in the world. We're extremely proud of our record of execution, and **today are committing to achieving over $400 million in net revenue in 2020**."[2]

26. The press release further stated:

> Capacity boost with state-of-the-art cultivation infrastructure: The Transaction gives HEXO the capacity to produce approximately 150,000 kg of high-quality cannabis annually. The Transaction also provides HEXO access to four cutting-edge production campuses totaling close to **1.8 million sq. ft. of near-term cultivation space** and diversified growing and production techniques. This is in addition to **HEXO's 579,000 sq. ft. facility** for a manufacturing and product development centre of excellence in Belleville, Ontario.
>
> Diversified domestic market penetration: Combined, HEXO and Newstrike have **established distribution agreements** in 8 provinces including Ontario, Quebec, British Columbia, Alberta, Saskatchewan, Manitoba, Nova Scotia, and Prince Edward Island, allowing broad consumer access to HEXO's products across Canada.
>
> Premium indoor facility: Newstrike's licensed indoor facility provide HEXO with access to diversified growing techniques and positions HEXO for flexibility for international exports as global cannabis markets continue to open.
>
> Accretive synergies: **The combined entity is estimated to realize annual synergies of $10 million**, allowing HEXO to operate more efficiently with a commitment to continued excellence . . . .
>
> Based on the completion of the Transaction, for fiscal 2020, **HEXO estimates net and gross revenues from the sale of cannabis in Canada will be in excess of $400 million and $479 million respectively**.

[2] Emphasis added throughout, unless otherwise noted.

Case 1:20-cv-00196 Document 1 Filed 01/09/20 Page 9 of 27

27. On March 14, 2019, HEXO released its Condensed Interim Consolidated Statements of Financial Position, reporting a net revenue of over CAD$13 million and inventory valued at over CAD$10 million.

28. With respect to the recognition of the value of HEXO's inventory, Defendants stated:

> Inventory is valued at the lower of cost and net realizable value. Cost is determined using the weighted average method. Inventories of harvested cannabis are transferred from biological assets at their fair value at harvest, which becomes the initial deemed cost of the inventory. Any subsequent post-harvest costs are capitalized to inventory to the extent that cost is less than net realizable value. Subsequent costs include materials, overhead, amortization, stock-based compensation of applicable employees and labour involved in packaging and quality assurance. The identified capitalized direct and indirect costs related to inventory are subsequently recorded within 'cost of goods sold' on the statement of loss and comprehensive loss at the time the product is sold, with the exclusion of realized fair value amounts included in inventory sold which are recorded as a separate line within gross margin before depreciation. Net realizable value is determined as the estimated selling price in the ordinary course of business less the estimated costs of completion and the estimated costs necessary to make the sale. Packaging and supplies are initially valued at cost and subsequently at the lower of cost and net realizable value.

29. With respect to the accounting standards used to prepare HEXO's financial statements, Defendants stated:

> These condensed interim consolidated financial statements have been prepared in compliance with International Accounting Standard 34, Interim Financial Reporting ("IAS 34"). These condensed interim consolidated financial statements should be read in conjunction with the annual consolidated financial statements of the Company for the fiscal year ended July 31, 2018, which have been prepared in accordance with International Financial Reporting Standards ("IFRS").

30. On March 14, 2019, during a second quarter 2019 earnings call hosted by HEXO, Tamy Chen, BMO Capital Markets Equity Research Analyst, asked HEXO's senior management for an update on the Newstrike acquisition, including production in Newstrike's Niagara greenhouse:

**Question - Tamy Chen:** Just first question on Newstrike, are you able to give us an update in terms of where the company is with respect to the ramp of their greenhouse in Niagara, where are they currently at? Any color there would be helpful.

**Answer - Sebastien G. St-Louis:** Yes. So of the total 450,000 square feet that we're adding, there is 250,000 feet that are licensed operational, and we're looking forward to bringing in the HEXO team in there to ramp up the yields. We believe that coupled with the great infrastructure Newstrike has put in place, putting in HEXO's management and production processes will greatly increase yields there.

**Question - Tamy Chen:** And the other 200,000 square feet, that's still under construction?

**Answer - Sebastien G. St-Louis:** That's correct. So well underway, the walls are all up, the glass is on, but there will be a licensing -- there is an expected licensing delay on that. But of course, we're putting our regulatory team, which as we've proven time and time again, one of the best in the business, so we don't anticipate any major issues.

31. During the same call, in response to an analyst's question about HEXO's production of "twice as much cannabis as was [sold] in the quarter," Defendant St. Louis responded by guiding to a 2020 revenue run rate of CAD$400 million:

Yes, it's entirely related to supply and packaging infrastructure. So I've alluded to this earlier in one of the questions. But effectively, growing cannabis is one thing and producing it and putting it on the inventory as bulk packaged inventory, but then actually packaging it for the consumer is an entirely different beast. And **we're ramping all -- we're ramping up all that production infrastructure to rapidly accelerate**. So that's really what's happening, although the product coming off the line from our B9 facility is -- I mean, the harvests are starting soon. Once it's come off the line, you have all the testing protocols, you have all the cleaning protocols that need to go in such as the radiation or other, and then you need to actually have the packaging, shipping, et cetera, loading into the stores. So there's a delay there. **And really it's that delay, coupled with the kicking in of B9, which is causing a bit of a flat Q3. But of course, we're unlocking that in Q4.** So we think it's momentary, and then there is really a complete decoupling **when we hit that $400 million net next year**, and of course, that's supported by **very strong demand**. That's why we're confident putting out numbers. We have that demand pent-up through multiple provinces beyond Quebec.

32. Further, on the March 14, 2019 earnings call, in response to an analyst's question about newly released "data that came out about industry production, inventory and sales data," Defendant St. Louis responded:

> I think as a general rule all the LPs, including HEXO, generally underestimated the amount of packaging, infrastructure and logistics and employees and space that it would take to actually do fulfillment. It's one thing to grow this product, it's one thing to bag it in giant bags. But by the time you think about putting in an individual multiline products, now that's quite complex. And this is why HEXO is very bullish and why we think our Belleville facility is transformational. A 2 million square-foot facility will give us enough space to fulfill that $400 million net sales next year and beyond. And so that's all baked in to that forecast that we're giving you that we will be up and running in Belleville, in fact, that we expect to have that fully up and running by the end of the summer. And so we don't expect any -- too many more challenges from there, but that's where you're seeing the disconnect, it's basically inventory piling up from cultivation and LPs not being able to process it.

33. On June 13, 2019, HEXO released its Condensed Interim Consolidated Statements of Financial Position, reporting a net revenue of over CAD$13 million for the three months ended April 30, 2019, and inventory valued at over CAD$18 million.

34. With respect to the recognition of the value of HEXO's inventory, Defendants stated:

> Inventory is valued at the lower of cost and net realizable value. Cost is determined using the weighted average method. Inventories of harvested cannabis are transferred from biological assets at their fair value at harvest, which becomes the initial deemed cost of the inventory. Any subsequent post-harvest costs are capitalized to inventory to the extent that cost is less than net realizable value. Subsequent costs include materials, overhead, amortization, stock-based compensation of applicable employees and labour involved in packaging and quality assurance. The identified capitalized direct and indirect costs related to inventory are subsequently recorded within 'cost of goods sold' on the statement of loss and comprehensive loss at the time the product is sold, with the exclusion of realized fair value amounts included in inventory sold which are recorded as a separate line within gross margin before depreciation. Net realizable value is determined as the estimated selling price in the ordinary course of business less the estimated costs of completion and the estimated costs necessary to make the sale. Packaging and supplies are initially valued at cost and subsequently at the lower of cost and net realizable value.

35. With respect to the accounting standards used to prepare HEXO's financial statements, Defendants stated:

> These condensed interim consolidated financial statements have been prepared in compliance with International Accounting Standard 34, Interim Financial Reporting ("IAS 34"). These condensed interim consolidated financial statements should be read in conjunction with the annual consolidated financial statements of the Company for the fiscal year ended July 31, 2018, which have been prepared in accordance with International Financial Reporting Standards ("IFRS").

36. On June 13, 2019, during a third quarter 2019 earnings call hosted by HEXO, Defendant St. Louis stated:

> Our total gross revenue was $15.9 million for the third quarter, an increase of 11.8x over the same quarter in the prior year. As I guided last quarter, gross adult-use revenue remained flat at $14.6 million. In comparison to the same period in 2018, it increased by almost 1,000%, which included only medical sales last year.
>
> We expect revenues to double this quarter with realized sales from the first harvest from B9 and our 1 million square foot facility and also as we start to ship flower outside of Quebec, which we're very excited to do.

37. The statements referenced in ¶¶ 23-36 above were materially false and/or misleading when made because they failed to disclose the following adverse facts pertaining to the Company's business, operations, and financial condition, which were known to or recklessly disregarded by Defendants. Specifically, Defendants failed to disclose to investors that: (i) HEXO's reported inventory was misstated as the Company was failing to write down or write off obsolete product that no longer had value; (ii) HEXO was engaging in channel-stuffing to inflate its revenue figures and meet or exceed revenue guidance provided to investors; (iii) HEXO was cultivating cannabis at its facility in Niagara, Ontario that was not appropriately licensed by Health Canada; and (iv) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**The Truth Begins to Emerge**

38. On October 4, 2019, HEXO announced the abrupt and immediate resignation of its then-CFO, Defendant Monahan. This resignation came just a few months into the job. Analysts responded immediately to the departure. Bank of America analyst Christopher Carey reportedly double downgraded his "buy" recommendation to "underperform" just a few days later, and commented that "[p]ut simply: a departure that is so abrupt, from a person with CFO experience at other public companies, is concerning, and in our view will leave investors guessing 'what don't we know?' for some time."

39. On this news, HEXO's share price fell $0.26 per share, or 6.4%, to close at $3.80 per share on October 7, 2019.

40. Then, on October 10, 2019, HEXO issued a press release providing preliminary Q4 2019 revenue results and withdrew its FY 2020 outlook. In the press release, Defendants stated that they now expect HEXO's net revenue for the fourth quarter to be approximately $14.5 million to $16.5 million, well below previous guidance that called for CAD$24.8 million. Further, Defendants announced that HEXO had elected to withdraw its FY 2020 financial outlook, which had included anticipated net-revenue of approximately CAD$400 million. St. Louis attributed the lowered expected revenue on "lower than expected product sell through," "[s]lower than expected store rollouts, a delay in government approval for cannabis derivative products and early signs of pricing pressure . . . [a] delay in retail store openings [and] regulatory uncertainty."

41. This news caused HEXO's share price to plummet 22.55% on October 10, 2019, from $3.68 per share to $2.85 per share.

42. On October 24, 2019, HEXO announced 200 layoffs, which resulted in the subsequent shutting down of several facilities it operated near Niagara Falls, Ontario.

Significantly, the cuts included the elimination of executive positions and the departures of Arno Groll, Chief Manufacturing Officer, and Nick Davies, Chief Marketing Officer. The Company further postponed its quarterly earnings report, having just inked a CAD$70 million deal with an investor group, including Co-Founder and CEO Defendant St. Louis and three board members.

43. The same day, CIBC World Markets Corp. ("CIBC") published a scathing analyst report regarding HEXO, pointing out that "**[c]ompressed margins, lower Quebec market share, ... management credibility issues**," and a "curiously timed and structured convertible debt deal" "**all serve as reasons to believe that both operations and sentiment could worsen from here**." CIBC further noted that "[t]oday's announcement of job cuts indicates to us that the company has not been able to capture meaningful share outside its home province." As a result, CIBC downgraded HEXO to Underperformer from Neutral, with a new price target of $3.00 from its previous $4.00.

44. On this news, HEXO's share price dropped approximately 6.32% on October 24, 2019, from a previous-day close of $2.69 per share to $2.52 per share.

45. On October 29, 2019, HEXO reported its financial results for Q4 and FY 2019 on Form 40-F, announcing that the Company had taken an impairment on CAD$16.9 million of inventory purchased in the prior period because of declining market prices. The Company further confirmed that "[c]ultivation has been suspended at the Niagara facility."

46. On this news, HEXO's share price dropped an additional 3% on October 29, 2019, from a previous-day close of $2.32 per share to $2.25 per share.

47. On November 15, 2019, HEXO issued a press release entitled "HEXO Corp provides additional transparency on licensing," admitting that it grew marijuana in an unlicensed facility in Niagara, Ontario, previously owned and operated by Newstrike. The Company

admitted that on July 30, 2019, after the Newstrike acquisition closed, HEXO discovered that cannabis was being grown in Block B, which was not adequately licensed. HEXO management immediately ceased cultivation and production activities in the unlicensed space and notified Health Canada.

48. On this news, HEXO's share price dropped an additional 5.29% on November 15, 2019, from a previous-day close of $1.89 per share to $1.79 per share.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of persons and entities who purchased or otherwise acquired HEXO securities during the Class Period (the "Class"). Excluded from the Class are Defendants, directors, and officers of the Company, as well as their families and affiliates.

50. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, HEXO securities were actively traded on the NYSE American and NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained or controlled by HEXO or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a) Whether the Defendants violated the Exchange Act;

b) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

c) Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

d) Whether the price of the Company's securities were artificially inflated; and

e) The extent of damage sustained by Class members and the appropriate measure of damages.

52. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

53. Plaintiff will adequately protect the interests of the Class and has retained experienced counsel. Plaintiff has no interests that conflict with those of the Class.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## LOSS CAUSATION

55. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

56. Throughout the Class Period, the market price of HEXO securities were inflated by the material omissions and false and misleading statements made by the Company and the Individual Defendants, which were widely disseminated to the securities markets, investment

analysts and the investing public. The false and misleading statements materially misrepresented to the market the Company's operations, finances, and prospects and caused HEXO securities to trade in excess of their true value.

57. As a result, Plaintiff purchased HEXO securities at artificially inflated prices. When the partial truth about HEXO's core operation was revealed to the market, the price of its shares declined in response, as the artificial inflation caused by Defendants' misrepresentations and omissions was partially removed from the price of HEXO shares, thereby causing substantial damages to Plaintiff and the Class. The declines in the price of HEXO securities were the direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the price declines negate any inference that the losses suffered by Plaintiff and other members of the Class were caused by changed market conditions, macroeconomic or industry factors or company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of HEXO securities and the subsequent significant decline in the value of HEXO securities when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

58. At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by Plaintiff and the other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of HEXO's business, operations, and financial condition, as alleged herein. Throughout the Class Period, Defendants issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or

misleading, causing the price of HEXO securities to be artificially inflated. Plaintiff and other Class members purchased HEXO securities at those artificially inflated prices, causing them to suffer damages as complained of herein when the relevant truth was revealed.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

59. At all relevant times, the market for HEXO shares was an efficient market for the following reasons:

a) HEXO shares met the requirements for listing and were listed and actively traded on the NYSE American and NYSE, a highly efficient and automated market;

b) As a regulated issuer, HEXO filed periodic public reports with the SEC and the NYSE American and NYSE;

c) HEXO regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

d) HEXO was followed by several securities analysts employed by major brokerage firms who wrote reports, which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports were publicly available and entered the public marketplace.

60. As a result of the foregoing, the market for HEXO shares promptly digested current information regarding HEXO from all publicly available sources and reflected such information in the prices of the shares. Under these circumstances, all purchasers of HEXO shares during the Class Period suffered similar injury through their purchases at artificially

inflated prices and/or purchases of options tied to the artificially inflated price and a presumption of reliance applies.

## NO SAFE HARBOR

61. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements that were made because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of HEXO who knew that those statements were false when made.

## ADDITIONAL SCIENTER ALLEGATIONS

62. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63. The Individual Defendants acted with scienter with respect to the materially false and misleading statements and omissions of material facts set forth above because they knew, or at the very least, recklessly disregarded that those statements were materially false or misleading when made. As senior executives of HEXO, their scienter is imputed to HEXO.

64. As alleged herein, Defendants acted with scienter in that:

a) Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading;

b) Defendants knew that such statements or documents would be issued or disseminated to the investing public;

c) Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents and actions intended to manipulate the market price of HEXO securities as primary violations of the federal securities laws; and

d) Defendants, by virtue of their receipt of information reflecting the true facts regarding HEXO, their control over, and/or receipt, and/or modifications of HEXO's allegedly materially misleading statements, and/or their associations with the Company, which made them privy to confidential proprietary information concerning HEXO, participated in the fraudulent scheme alleged herein.

65. The adverse developments at issue also impacted HEXO's most important revenue streams and involved the Company's only two facilities of any significance. Furthermore, the Company's cannabis operations and compliance with Canadian law and Health Canada regulations, including the phased roll-out of the Company's increase in production and related licensing, were overseen by the Individual Defendants as the Company's top executives during the Class Period; their involvement included hands-on oversight of the Company's operations. As such, the Individual Defendants knew or were reckless in not knowing of the undisclosed facts detailed herein.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

66. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67. By reason of the conduct described above, HEXO and the Individual Defendants, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, directly or indirectly:

a) Used or employed devices, schemes, or artifices to defraud;

b) Made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c) Engaged in acts, practices, or courses of business, which operated or would operate as a fraud or deceit upon other persons, in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

68. While engaging in the conduct described above, HEXO and the Individual Defendants acted knowingly or recklessly.

69. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for HEXO shares. Plaintiff and the Class would not have purchased HEXO shares at the prices they paid, or at all, if they had known that the market prices were artificially and falsely inflated by Defendants' misleading statements.

70. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of HEXO securities during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

71. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72. During the Class Period, the Individual Defendants participated in the operation and management of HEXO, and conducted and participated, directly and indirectly, in the conduct of HEXO's business affairs. Because of their senior positions, they knew the adverse non-public information about HEXO's misstatement of income and expenses and false financial statements.

73. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to HEXO's financial condition and results of operations, and to correct promptly any public statements issued by HEXO which had become materially false or misleading.

74. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which HEXO disseminated in the marketplace during the Class Period concerning HEXO's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause HEXO to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of HEXO within the meaning of Section 20(a) of the Exchange Act. In this capacity, they

participated in the unlawful conduct alleged which artificially inflated the market price of HEXO securities.

75. Each of the Individual Defendants, therefore, acted as a controlling person of HEXO. By reason of their senior management positions and/or being directors of HEXO, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, HEXO to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of HEXO and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

76. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by HEXO.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Lead Plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and Lead Plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 10, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1. I, George Hudak, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against HEXO Corporation ("HEXO" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire HEXO securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a class of investors who purchased or acquired HEXO securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in HEXO securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro-rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

Case 1:20-cv-00196 Document 1 Filed 01/09/20 Page 26 of 27

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed 10/18/19
(Date)

George Hudak
(Signature)

George Hudak
(Type or Print Name)

**HEXO Corp. (HEXO)** **Hudak, George**

**List of Purchases and Sales**

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 6/21/2019 | Purchase | 26 | $5.6500 |
| 6/25/2019 | Purchase | 15 | $5.2100 |
| 6/25/2019 | Purchase | 39 | $5.1200 |
| 7/8/2019 | Purchase | 57 | $5.1700 |
| 7/9/2019 | Purchase | 11 | $4.9700 |
| 7/22/2019 | Purchase | 71 | $4.8700 |
| 7/22/2019 | Purchase | 31 | $4.7300 |
| 7/24/2019 | Purchase | 45 | $4.4500 |
| 8/20/2019 | Purchase | 23 | $4.2900 |
| 8/27/2019 | Purchase | 104 | $3.8000 |
| 8/30/2019 | Purchase | 32 | $3.9600 |
| 9/13/2019 | Purchase | 35 | $4.2100 |
| 9/17/2019 | Purchase | 25 | $4.1100 |
| 9/27/2019 | Purchase | 29 | $4.1200 |
| 8/21/2019 | Sale | (35) | $4.2100 |
| 10/16/2019 | Sale | (633) | $2.5100 |